# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**September 4, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**BIANCA MILLER, individually and as natural mother
and next friend to K.R., a minor,
Plaintiff Below, Petitioner**

**v.) No. 23-ICA-378**          (Cir. Ct. of Ohio Cnty. Case No. CC-35-2014-C-140)

**WHEELING PARK COMMISSION
and BECKER ARENA PRODUCTS, INC.,
Defendants Below, Respondents**

**and**

**VASCO, INC. and
RINK SYSTEMS, INC.,
Third-Party Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Bianca Miller appeals the July 24, 2023, Order of the Circuit Court of Ohio County, which granted Respondent Wheeling Park Commission's ("Wheeling Park") motion for summary judgment. Wheeling Park filed a response.[1] Ms. Miller did not file a reply. The issue on appeal is whether the circuit court erred by finding that Ms. Miller failed to set forth sufficient facts to maintain a prima facie negligence claim for injuries K.R. sustained in 2007 while ice skating at a facility operated by Wheeling Park.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Ms. Miller is represented by Ronald W. Zavolta, Esq., Michael P. Zavolta, Esq., and Matthew A. Jones, Esq. Wheeling Park is represented by Thomas E. Buck, Esq., and Jason P. Pockl, Esq. Respondents Becker Arena Products, Inc., Vasco, Inc., and Rink Systems, Inc., did not participate in this appeal.

On November 4, 2007, Ms. Miller, and her then five-year-old son, K.R.,[2] went to an ice rink operated by Wheeling Park to ice skate. K.R. and his mother were accompanied by another individual, Mr. Fragle.[3] Upon arriving at the ice rink, Ms. Miller rented ice skates for herself and K.R. who were both novice ice skaters. Ms. Miller also rented an "ice walker" device for her son to use.[4] Ms. Miller chose the model of ice walker that was recommended for her son's age and size. She then inspected the device, including putting her own weight on the device to ensure its stability prior to allowing K.R. to use it. Then, K.R. took time to acclimate himself with the device by walking with it on the carpeted area just outside the ice rink. No problems or defects with the ice walker were discovered or reported by Ms. Miller or K.R. at that time.

Thereafter, Ms. Miller and K.R. entered onto the ice. Shortly after entering the rink, and while using the ice walker, K.R. fell to the ice, breaking his left femur. Ms. Miller alleges the fall was proximately caused by the defective and broken ice walker, which she claims had broken at its center bar into two separate pieces. She claims this was when she first discovered that the ice walker's center bar had been held together with black electrical tape, which had been previously hidden from view by foam padding on the ice walker.[5]

Ms. Miller did not take any pictures of the ice walker after the incident. During her deposition in this case, she recalled that after the incident, she tossed the ice walker aside, picked up K.R., exited the facility and took him to a local emergency room in her personal vehicle. Further, Ms. Miller acknowledged that following K.R.'s fall, she did not report the incident to Wheeling Park staff. Instead, she claimed she briefly spoke to a "tall individual with glasses" on the ice but did not know his name. She indicated that Mr. Fragle was in a different area of the ice rink when the accident occurred, did not witness K.R.'s fall, and that he stayed at the ice rink and did not accompany Ms. Miller to the hospital. Prior to leaving the ice rink with K.R., Ms. Miller told Mr. Fragle about the accident. Mr. Fragle later told Ms. Miller that he had reported the incident to Wheeling Park staff.

---

[2] Although K.R. has passed the age of majority since this case was filed, the case style was never amended in circuit court. Therefore, this decision will continue to refer to him by initials to be consistent with the case style used in circuit court and submitted to this Court on appeal.

[3] At that time, Mr. Fragle was Ms. Miller's significant other. According to Ms. Miller, their relationship ended shortly after November 4, 2007. Mr. Fragle was not deposed during the underlying litigation.

[4] This is a training device, commonly used to assist novice skaters to move about the ice.

[5] Ms. Miller described the padding as a "pool noodle."

2

A "Personal Injury/Illness Report" ("Report") dated November 4, 2007, was completed by a Wheeling Park employee. This Report listed K.R.'s injury as "fell on ice and fell and twisted his leg." The reporting employee also wrote that "[Mr. Fragle] told me they transported [K.R.] to Ruby Memorial with broken leg. He said [Ms. Miller] did not report accident to ice guards." It is undisputed that nothing within the four corners of the Report makes any reference to the ice walker. The Report also indicates that there were no witnesses to the accident and that no property damage occurred.

Medical records show that at the emergency room, K.R. told doctors that he had two falls onto the ice, that both were caused by his attempts to do a split, and that his mother failed to catch him. According to these records, neither Ms. Miller nor K.R. ever mentioned an ice walker or that an ice walker malfunctioned or broke, resulting in K.R.'s fall. Instead, the physician's notes reflect that K.R. fell once, got up and cried, then fell again with his knees coming together, his left leg twisting, and him ending up in a split-like position.

On May 20, 2014, Ms. Miller filed her original complaint, and on June 9, 2015, Ms. Miller was granted leave to file an amended complaint, which she filed on August 18, 2015.[6] A protracted course of discovery ensued before concluding in January of 2022. On February 2, 2022, Wheeling Park filed its motion for summary judgment, contending that Ms. Miller had failed to establish a prima facie cause of action for negligence. In support of its motion, Wheeling Park attached several exhibits, including physicians' notes from K.R.'s emergency room visit on November 4, 2007, portions of Ms. Miller's and K.R.'s deposition transcripts, a copy of the Report, and signed affidavits from current and former Wheeling Park staff. The affidavits set forth that those individuals were working at the ice rink on November 4, 2007, and no incidents were reported to or observed by them personally on that day. The affidavits further set forth that Wheeling Park staff were trained in how to inspect the ice walkers for safety, it was customary business practice to inspect the devices each day prior to opening and to remove any damaged or defective ice walkers from public access, and on November 4, 2007, no defective equipment was discovered during pre-open inspections nor was a broken device found on the premises following K.R.'s accident.

On April 2, 2019, Ms. Miller filed a motion for spoliation of evidence, alleging Wheeling Park failed to preserve the ice walker that caused K.R.'s injuries, and requested an adverse inference jury instruction on the issue. The circuit court did not rule on this issue below. On July 17, 2023, Ms. Miller filed her response in opposition to summary

---

[6] Except for the negligence claim, the circuit court dismissed all of the other original complaint claims in November of 2014. Based on the order on appeal, the amended complaint realleged the causes of action that were previously dismissed. These claims were based on the theories of products liability, punitive damages, and negligent infliction of emotional distress. Thus, the only claim remaining at summary judgment was the negligence claim.

3

judgment. It primarily relied upon her and K.R.'s deposition testimony, the affidavits provided by Wheeling Park, and select interrogatory responses by Wheeling Park. The response argued that the deposition testimony, affidavits, and Wheeling Park's response to two interrogatories established that Wheeling Park inspected the ice walkers on November 4, 2007, failed to remove the defective device that contributed to K.R.'s injury, and did not have any maintenance or inspection records regarding the ice walker devices. Ms. Miller contended this evidence was sufficient to support her negligence claim.

The circuit court held a hearing regarding summary judgment on July 13, 2023, and on July 24, 2023, it entered the order presently on appeal. In that order, the circuit court found that summary judgment was appropriate because Ms. Miller could not establish the essential elements of a negligence claim. *See Wheeling Park Comm'n v. Dattoli*, 237 W. Va. 275, 280, 787 S.E.2d 546, 551 (2016) (noting that to prevail on a negligence claim a plaintiff must establish a duty, breach, and causation for their injury by a preponderance of the evidence). Here, the circuit court found Wheeling Park owed no duty in this case. It determined that K.R.'s injury was not foreseeable because there were not sufficient facts to show that Wheeling Park had knowledge of the defective condition of the ice walker, which was alleged to have caused the injury. *See Id.* (finding that a duty requires actual or constructive knowledge of defective condition which caused the injury).

The circuit court determined that Ms. Miller did not set forth sufficient facts to establish that Wheeling Park had actual or constructive knowledge that one of its ice walkers was defective, broken, or likely to fail, and that Ms. Miller's claims were based on mere allegations. The circuit court found that the record established that the ice walkers were inspected by Wheeling Park staff on November 4, 2007, at a time that was prior to the skating rink being open to the public, and that the devices were found to be in proper working condition. Moreover, Ms. Miller examined and tested K.R.'s ice walker, finding it to be safe and acceptable for his use. Likewise, K.R. also acclimated himself with the ice walker prior to going onto the ice. It was also established that at no time did he or Ms. Miller report a defect, concern, or flaw with the device to Wheeling Park.

In finding that Ms. Miller had only presented unsupported allegations of a duty owed by Wheeling Park, the circuit court cited our Supreme Court of Appeals, noting "[t]he mere occurrence of an accident does not give rise to the presumption of negligence, and an owner of [a] business premises is not legally responsible for every fall which occurs on his premises." *Hersh v. E-T Enters., Ltd. P'ship*, 232 W. Va. 305, 317, 752 S.E.2d 336, 348 (2013) (quotations and citation omitted), *superseded by statute on other grounds as stated in Tug Valley Pharmacy, LLC v. All Plaintiffs Below In Mingo Cnty.*, 235 W. Va. 283 n. 12, 773 S.E.2d 627 n. 12 (2015). In this case, the circuit court found that the medical records established that K.R., a novice ice skater, fell while trying to do a split on ice, a naturally slippery surface. Further, there was no evidence that Wheeling Park contributed to K.R.'s fall or injury. Thus, a genuine issue of material fact did not exist, no duty was established, and Wheeling Park was entitled to summary judgment. This appeal followed.

4

On appeal, we review a circuit court's summary judgment ruling de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 190, 451 S.E.2d 755, 756 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). Under this standard of review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser,* 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 2). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.,* 194 W. Va. 52, 56, 459 S.E.2d 329, 333 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (quotations and citations omitted). With these principles in mind, we turn to the matter sub judice.

From the outset, we note that Ms. Miller's brief fails to include an assignment of error section as required by Rule 10(c)(3) of our Appellate Rules. Instead, the brief consists of the singular, overarching argument that the circuit court erred in granting Wheeling Park summary judgment based upon its finding that no duty of care was owed. Upon review, we agree with the circuit court's determination that summary judgment was appropriate in this case; however, as explained below, we reach that conclusion for a different reason.

We begin by recognizing that our state's negligence jurisprudence is well settled. To that end, our Supreme Court of Appeals has stated:

> Our laws governing negligence claims are well-settled. This Court has explained that to prevail in a negligence suit "it is incumbent upon the plaintiff to establish, by a preponderance of the testimony, three propositions: (1) A duty which the defendant owes him; (2) A negligent breach of that duty; (3) injuries received thereby, resulting proximately from the breach of that duty." *Webb v. Brown & Williamson Tobacco Co.*, 121 W. Va. 115, 118, 2 S.E.2d 898, 899 (1939) (citations omitted). We held in syllabus point 1 of *Parsley v. Gen. Motors Acceptance Corp.*, 167 W. Va. 866, 280 S.E.2d 703 (1981), "In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." In other words, "[l]iability of a person for injury to another cannot be predicated on negligence unless there has been on the part of the person sought to be charged some omission or act of commission in breach of duty to the person injured." Syl. pt. 6, *Morrison v. Roush*, 110 W. Va. 398, 158 S.E. 514 (1931).

5

*Dattoli*, 237 W. Va. at 280, 787 S.E.2d at 551. Below, the circuit court rested its decision on what it determined to be a lack of duty owed by Wheeling Park after examining the foreseeability of harm under the factors set forth in Syllabus Point 3 of *Sewell v. Gregory*, 179 W. Va. 585, 586, 371 S.E.2d 82, 83 (1988). It is on this point that we disagree with the circuit court. First, our law provides that Wheeling Park owed Ms. Miller and K.R. a duty of reasonable care. Syl. Pt. 4, *Mallet v. Pickens*, 206 W. Va. 145, 522 S.E.2d 436 (1999) ("The common law distinction between licensees and invitees is hereby abolished; landowners or possessors now owe any non-trespassing entrant a duty of reasonable care under the circumstances."). The scope of Wheeling Park's duty must be determined by the foreseeability of harm under the circumstances. As our Supreme Court of Appeals held in *Sewell*:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

*Sewell*, 179 W. Va. at 586, 371 S.E.2d at 83, syl. pt. 3. Here, the premises upon which the injury occurred was an ice rink operated by Wheeling Park. Further, K.R. was using an ice walker, which was purchased and made available for rent by Wheeling Park. Based upon these facts, along with the axiom that ice is an inherently slippery surface, it was foreseeable that an individual may fall and be injured while using Wheeling Park's facilities. Thus, Wheeling Park owed a duty of reasonable care. However, our analysis does not end here.

To support her negligence claim, Ms. Miller was also required to set forth sufficient facts for the element of breach. In evaluating whether Wheeling Park breached its duty of reasonable care, we consider the following:

> In determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of the injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.

*Mallet*, 206 W. Va. at 146, 522 S.E.2d at 437, syl. pt. 6. Moreover, "before an owner of land may be held liable for negligence, ' he must have had actual or constructive knowledge of the defective condition which caused the injury.'" *Dattoli*, 237 W. Va. at 280, 787 S.E.2d at 551 (citations omitted). In the present case, Ms. Miller offered no evidence

6

demonstrating that Wheeling Park knew or should have known that the ice walker at issue was defective. As such, she has failed to establish that Wheeling Park breached its duty of reasonable care in this case.

Instead, the undisputed facts illustrate that Wheeling Park trained its employees to inspect the ice walkers on a daily basis, to remove any unsafe devices from public access, and that the ice walkers were inspected and found to be in proper working condition on November 4, 2007. Ms. Miller inspected the fitness of the subject walker herself, which included placing her body weight upon the same before finding the device to be safe for K.R.'s use. K.R. also tested the device prior to using it on the ice. Critically, neither reported any issues or defects with the device to Wheeling Park. When K.R.'s accident occurred, Ms. Miller did not file an official accident report with Wheeling Park,[7] she tossed the ice walker aside, picked up her son, and immediately transported him to the hospital, leaving Mr. Fragle behind who reported the incident to the facility. However, neither Wheeling Park's Report, nor K.R.'s medical records make any mention of a broken or otherwise defective ice walker, let alone that K.R. was using an ice walker at the time of his accident or that he used the same in an attempt to break his fall. Rather, Wheeling Park's Report states K.R. fell on the ice and twisted his leg; whereas the medical records set forth that K.R. stated he fell because he was trying to perform a split on the ice. The record contains no evidence of the broken ice walker that Ms. Miller claims contributed to K.R.'s injury.[8]

Here, while we dispose of this case on the element of breach instead of duty, we find no error in the circuit court's ultimate determination that Ms. Miller failed to set forth

---

[7] In her deposition testimony, Ms. Miller asserted that prior to leaving the ice rink on November 4, 2007, she interacted with two individuals whom she believed were Wheeling Park employees about K.R.'s accident. However, Ms. Miller offered no evidence to corroborate this assertion below and, thus, she cannot establish a genuine issue of material fact on this issue.

[8] While the record does contain photographs of ice walkers, which are presumably the ice walkers available at Wheeling Park, none of those pictures are of the alleged broken ice walker, nor is there any indication in the record when those photographs were taken or by whom. Further, in her deposition, Ms. Miller testified that she did not take those photographs and did not know who took them.

sufficient facts to establish a prima facie case of negligence.[9] Therefore, we affirm the circuit court's entry of summary judgment.[10]

Although not raised by Ms. Miller as an assignment of error, and only mentioned in passing on appeal, we briefly address Ms. Miller's contention regarding her pending motion for spoliation of evidence and adverse jury instruction. On that issue, she claims that as a result of the circuit court's entry of summary judgment "[she] has been completely deprived of a ruling" on the motion. We disagree and find that in light of the facts of this case, any error by the circuit court on that issue is harmless. *See State v. McIntosh*, 207 W. Va. 561, 577, 534 S.E.2d 757, 773 (2000) (citation omitted) ("Error in evidentiary ruling is 'harmless error' when it is trivial, formal, or merely academic, and not prejudicial to substantial rights of party assigning it, and where it in no way affects outcome of trial."). Ms. Miller's motion is predicated upon her allegation that Wheeling Park failed to preserve the broken ice walker in the event K.R.'s injuries would lead to litigation. However, as we have established, Ms. Walker has failed to establish that Wheeling Park had actual or constructive knowledge of the broken ice walker or that any broken ice walker that *may* have been discovered on November 4, 2007, was related to K.R.'s accident. As such, because Ms. Miller failed to offer sufficient facts to support her negligence claim in the first instance, the case is not proceeding to trial and, thus, the lack of a ruling on her motion by the circuit court does not affect the outcome of this case. *See* Syl. Pt. 7, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 161, 133 S.E.2d 770, 772 (1963) (holding that "summary judgment . . . does not infringe upon the . . . right of a party to a trial by

---

[9] Although it is unclear from the record on appeal, to the extent Ms. Miller is asserting a negligent inspection claim, we find that such a claim would also fail for the same reasons set forth herein.

[10] In deciding this issue on the element of breach, we apply the rationale recently used by our Supreme Court of Appeals:

> We recognize our previous holding that "[t]he questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury *where the evidence is conflicting* or when the facts, though undisputed, are such that reasonable men draw different conclusions from them." Syl. Pt. 2, *Evans v. Farmer*, 148 W. Va. 142, 133 S.E.2d 710 (1963) (emphasis added). Because we find that the evidence in the instant case is undisputed and not such that could lead reasonable people to arrive at different conclusions, we find that summary judgment in Respondent's favor was appropriate.

*Orso v. City of Logan*, 249 W. Va. 602 n.6, 900 S.E.2d 28 n.6 (2024).

jury; it is not a substitute for a trial, or a trial either by a jury or by the court of an issue of fact, but is a determination that, as a matter of law, there is no issue of fact to be tried.").

Accordingly, we affirm the circuit court's July 24, 2023, order.

Affirmed.

**ISSUED:** September 4, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear